**MCGUIRE LAW, P.C.**
Eugene Y. Turin (# 342413)
680 E Colorado Blvd, Suite 180
Pasadena, CA 91101
Tel: (312) 820-9003
Fax: (312) 275-7895
Email: eturin@mcgpc.com
David L. Gerbie (admitted *pro hac vice*)
Brendan Duffner (admitted *pro hac vice*)
Jordan R. Frysinger (admitted *pro hac vice*)
Donald S. Cuba II (admitted *pro hac vice*)
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
Email: dgerbie@mcgpc.com
Email: bduffner@mcgpc.com
Email: jfrysinger@mcgpc.com
Email: dcuba@mcgpc.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (# 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Tel: (925) 300-4455
Fax: (925) 407-2700
Email: ltfisher@bursor.com

*Attorneys for Plaintiffs and the Putative Class Members*

**ARNOLD & PORTER KAYE SCHOLER LLP**
Douglas A. Winthrop (# 183532)
Joseph Farris (# 263405)
Jonathan M. Swisher (# 291651)
Anushka Parihar (# 366286)
Four Embarcadero Center, 14th Floor
San Francisco, CA 94111-4024
Tel: (415) 417-3100
Fax: (415) 471-3400
Email: douglas.winthrop@arnoldporter.com
Email: joseph.farris@arnoldporter.com
Email: jonathan.swisher@arnoldporter.com
Email: anushka.parihar@arnoldporter.com

Allyson Myers (# 342038)
777 S. Figueroa St. 44th Floor
Los Angeles, CA 90017
Tel: (213)-243-4000
Fax: (213)-243-4199
Email: ally.myers@arnoldporter.com

*Attorneys for Defendant Adobe Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ELIZABETH LYON and ARTHUR KLEINER, individually and on behalf of similarly situated individuals,

Plaintiffs,

vs.

ADOBE INC., a Delaware corporation

Defendant.

Case Numbers: 3:25-cv-10732-JSC
3:26-cv-01218-JSC

[~~PROPOSED~~] STIPULATED ORDER RE: DISCOVERY OF TANGIBLE THINGS AND ELECTRONICALLY STORED INFORMATION

The Parties in this case stipulate to and submit the following language for entry as an Order Re: Discovery of Tangible Things and Electronically Stored Information in this case. The Parties reserve all rights to move to amend the language contained in this Order in the future. The Parties agree to meet and confer in good faith to negotiate agreed upon language before moving for any such amendment.

**1. PURPOSE**

This Order will govern discovery of hard-copy documents and electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information and Civil Standing Order, and any other applicable orders and rules. The Parties acknowledge that production of source code is not covered by this ESI Order. The Parties shall negotiate a separate protocol and supplemental order to govern the inspection and production of information designated as HIGHLY CONFIDENTIAL – SOURCE CODE or HIGHLY CONFIDENTIAL – TRAINING DATA as needed.

**2. COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI and Civil Standing Order.

**3. LIAISON**

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4. PRESERVATION**

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.

To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

a) The Parties will take reasonable and proportionate steps to preserve ESI that is within their respective possession, custody, or control and may be subject to discovery pursuant to FRCP 26(b)(1). By preserving information for the purposes of this litigation, the Parties are not conceding that such material is discoverable or relevant.

b) The Parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The Parties shall have a continuing obligation to take reasonable and proportional steps to identify and preserve custodial and non-custodial data sources and custodians as reasonably necessary;

c) If a Producing Party is aware of inaccessible data that is likely to contain unique, discoverable ESI, it will identify the source from which it claims the data is not reasonably accessible. The data sources listed below will be preserved pursuant to standard business processes only, and will not be searched, reviewed, or produced, unless ordered by the Court or agreed to by the Parties:

    i. ESI maintained or duplicated in any electronic backup system, unless unique, likely responsive data is unable to be collected in any of the agreed upon ESI data sources. If any party believes backups are required for a particular data source, the Parties agree to meet and confer to discuss the costs, benefits, and proportionality of this potential collection.

    ii. Deleted, shadowed, damaged, residual, slack, fragmented, or other data, which is only accessible by forensics and "unallocated" space on hard

drives.

iii. ESI stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems.

iv. On-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located.

v. ESI stored on photocopiers, scanners and fax machines.

vi. ESI in metadata fields that are frequently updated automatically, such as last-opened dates.

vii. Server, system, or network logs.

viii. Legacy data or data remaining from systems no longer in use that is unintelligible on the systems in use.

ix. Computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, and system files.

x. Other forms of ESI from sources that the party identifies as not reasonably accessible because of undue burden and cost.

**5. SEARCH**

a) The Parties agree that, by September 30, 2026 for the Parties' initial Fed. R. Civ. P. 34 requests for production, and within 28 days following service of the Producing Party's respective responses and objections for all future requests for production, the Producing Party shall disclose:

i. The names of individual custodians from whom the Producing Party plans to collect in response to the requests. The custodians shall be identified by name, job title(s), and job description.

ii. The locations and descriptions of custodial and non-custodial data sources from which the Producing Party plans to collect in response to the requests.

iii. The locations and descriptions of any other data sources likely to contain potentially relevant or responsive information within the possession, custody, and control of the Producing Party (e.g. email and/or mobile device providers, "cloud" storage, etc.), and for each other data source within the Producing Party's possession, custody, or control, the extent to which the Producing Party is (or is not) able to preserve information stored with the other data source.

b) Following this disclosure, the Parties agree to meet and confer to discuss: (1) the custodians from whom information will be collected or produced; (2) the use of search terms; (3) data sources, including custodial, non-custodial, and other data sources which will be searched; (4) the identity and scope of data sources to be searched without the use of search terms, and with the use of search terms; and (5) as necessary, any prioritization of categories of materials to be collected, reviewed, and produced.

c) The Parties' meet and confer process regarding search terms requires the Producing Party to provide hit reports for proposed search terms prior to producing any Documents via the use of search terms. Each Producing Party will develop its own appropriately tailored search terms to locate its documents that are responsive to discovery requests. Within 14 days after the meet and confer in Section 5(b), the Producing Party shall propose its search terms to the Requesting Party, with hit counts for each search term that set forth the unique number of hits and the total hits. The Requesting Party may request modified or additional search terms, and the Producing Party agrees to provide hit reports for any search term reasonably requested by the Requesting Party. The Parties agree to meet and confer regarding any modifications or additions to the search terms, as needed. Each Producing Party shall take reasonable steps to ensure that its search process does not exclude a material amount of responsive ESI or include a material amount of non-responsive ESI, including by making adjustments or corrections to its process as needed.

If, after reviewing a Producing Party's production, a Requesting Party reasonably requests additional information regarding the Producing Party's search process, the Producing Party will disclose a high-level description of any measures used, including, for example, any review of a random statistical sample of documents that do not hit on the search terms ("Null Set"), the sample size and sampling parameters (e.g., confidence level and margin of error), whether responsive documents were identified through such sampling, the level of end-to-end recall (the percentage of responsive Documents in the collection which were identified as responsive by that Producing Party's methodology), if applicable, and whether any adjustments were made to the search terms or review workflow as a result. If a Producing Party identifies responsive Document(s) within a Null Set, it shall promptly produce those Document(s). If there remain disputes between the Parties regarding validation, the Parties shall meet and confer to resolve such disputes in good faith, including a reasonable discussion regarding the quality-control measures used and any resulting refinements to the search terms or review workflow.

d) Each party will use its best efforts to filter out common system files and Application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

e) For instant messaging tools, such as Slack, the Parties will search for and produce responsive documents in 24-hour context windows, including all metadata that are reasonably available, and any edit history that is available.

## 6. PRODUCTION FORMATS

a) **Electronic Files.** The Parties agree that all Documents existing in electronic format shall be produced as black and white Group IV single-page TIFF image files of at least 300 dpi resolution or in any other format as the Parties may mutually agree. A party may request the production of images of greater resolution for specified documents based on a

showing of good cause. Page size shall be 8.5 x 11 inches unless, in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Images shall show all text and images that would be visible in the original native format. Original document orientation as displayed in the native file should be maintained in the TIFF image (e.g., portrait to portrait and landscape to landscape). The Parties shall provide image load files in Concordance (.OPT) format to facilitate the use of the produced images by a document management or litigation support system. The extracted, relevant metadata should be provided in a Concordance .DAT format, or other standard, compatible file format and extension as the Receiving Party specifies, and the searchable text or OCR for non-native or non-searchable native files will be provided as multi-page text Western European (Windows), Unicode (UTF16), Big-Endian Unicode, or UTF-8 text (.txt) files.

b) **Hard-Copy Files.** The Parties agree that all documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format. The Parties will use reasonable efforts to unitize documents correctly. Distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records. Scanned copies of documents in hardcopy or paper files should include copies of relevant file folder names as kept in the regular course of business, and metadata for such hardcopy or paper files should attempt using good faith efforts to identify custodians for such documents (including if possible all custodians who had access to the physical location of such documents) and the physical location where these documents were located. Searchable text shall be created using OCR.

c) **Native Files.** The Parties agree through the pendency of this litigation to exercise reasonable efforts to maintain all collected native files that may be relevant to this litigation in a manner that does not materially alter or modify the files or the metadata.

The Parties agree to produce Microsoft Excel or other spreadsheet files, Microsoft PowerPoint, Microsoft Word, and audio/video files, in their native electronic format, with the Bates number and confidentiality designation of the file contained in the file title. In addition, native files should be accompanied by an image (TIFF) placeholder that contains "Document Produced in Native Format," the beginning Bates number and confidentiality designation. Wherever feasible, the producing party shall include accompanying metadata in the load file (e.g., PARENT ID). Either Party may request the production of other file or files in native format where feasible and proportional to the needs of the case.

d) **Parent-Child Relationships.** Parent-child relationships (the association between an attachment and its parent document) shall be preserved whenever reasonable in such a way that a document and any attachments to that document are produced in the same production set and are identifiable as parent and child.

e) **Embedded or Linked Objects.** The Parties agree that hyperlinked documents are not attachments for purposes of attachment production. The Producing Party will consider reasonable requests to produce hyperlinked documents (such requests shall identify the hyperlinked document references by Bates number and by providing the relevant hyperlink, where available). Upon receipt of such request, the Producing Party will investigate whether the hyperlinked documents are duplicative or non-duplicative of produced materials, and will notify the Requesting Party accordingly. For non-duplicative materials, the Producing Party will take reasonable efforts to collect and produce any responsive and non-privileged hyperlinked documents. The Producing Party will produce the version of these documents as they exist at the time they are collected, which is how they are stored in the ordinary course of business. If the Producing Party determines that such efforts would be unduly burdensome or not proportional to the needs of the case, such as because the Requesting Party has identified any unreasonable number of

hyperlinks for production or because the hyperlinks are otherwise unduly burdensome to collect, it shall notify the Requesting Party, and the Parties shall meet and confer in good faith to reach a resolution.

f) **De-duplication.** The Parties will use their best efforts to de-duplicate documents as necessary prior to producing them; meaning that, if agreed upon, exact duplicates of a document (i.e., all duplicates having the same MD5 hash value as the original document) will be removed to the best of the producing party's ability from the entire population of documents to be produced. Names of custodians of copies of files eliminated due to deduplication shall be provided in the ALLCUSTODIANS metadata field accompanying the original file.

g) **Email Thread Suppression.** Each Party may produce complete email chains in such a way that redundant, incomplete portions of such email chains, and any redundant attachments, are not separately produced. Each Party shall preserve family relationships when engaging in email thread suppression. In instances where a redundant or incomplete email chain contains a unique attachment or unique text, that portion of the email chain and its unique attachment shall not be suppressed.

h) **Redactions.** The Producing Party can redact documents for privilege or otherwise as permitted under federal, state, or foreign data protection laws. The Producing Party may also redact proprietary source code, if such code appears in any document to be produced, and identify those redactions as being for such code. If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made. If the issue cannot be resolved, the Parties will seek resolution from the Court. When a document is redacted, the document will be produced in TIFF image unless otherwise agreed to by the Parties (e.g., if a native document that requires redaction is difficult to convert to TIFF or is not reasonably usable when converted to TIFF format, the

Producing Party can redact in native format). The TIFF image for a document produced in redacted form will include a label identifying the redacted area of the document and reason for redaction. For redacted items that were originally ESI, non-redacted metadata fields will be provided.

i) **No Designation of Discovery Requests**. Production of hard-copy documents and ESI in the reasonably usable form set out in this Order need not include any reference to the requests to which a document or ESI may be responsive.

j) **Metadata Fields.** Each of the metadata and coding fields set forth in Exhibit A (or analogous metadata fields that provide the same information) that can be extracted from a document shall be produced for that document, to the extent already in existence and reasonably accessible or available. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, such data need not be produced. The Parties are not obligated to populate manually any of the fields included in Exhibit A, attached hereto, if such fields cannot be extracted from a document, with the exception of the following fields: (1) BEGBATES, (2) ENDBATES, (3) BEGATTACH, (4) ENDATTACH, and (5) NATIVE FILE LINK (for native-produced files only), (6) TEXTPATH, (7) HASHVALUE, and (8) CUSTODIAN. The following metadata fields shall be provided for hard-copy documents: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. Any metadata fields for redacted documents that would reveal privileged information shall be excluded.

k) **Color.** Documents containing color shall be produced with a minimum resolution of 300 DPI in single-page JPG format.

l) **Structured Data.** Discovery in this matter may include the production of structured data (*i.e.,* quantitative data organized in a formatted repository or database). If the data cannot be produced in a reasonably usable format, the Parties will meet and confer to address the production format. Prior to any such meet and confer, the Producing Party will provide

sufficient information to enable the Receiving Party to evaluate the best method and format of production.

m) **Encrypted Files.** The Producing Party shall provide passwords to any encrypted or password-protected files, when reasonably practicable without creating an undue burden or expense.

**7. PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to phase the production of ESI by producing documents on a rolling basis. The Parties will agree to meet and confer about whether the production of ESI should be prioritized and how that prioritization may occur across ESI sources and custodians.

**8. DOCUMENTS PROTECTED FROM DISCOVERY**

a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

b) If any party withholds or redacts any document that is responsive to a discovery request, and is otherwise discoverable under the Federal Rules of Civil Procedure, on the basis of the attorney-client privilege, work product doctrine, or any other discovery privilege, that party shall prepare a privilege log (Fed. R. Civ. P. 26(b)(5)) setting forth the privilege relied upon and specifying separately for each document:

i. PRIVILEGE ID (or any other unique identifier for each privilege log entry);

ii. BEGBATES* & ENDBATES* (for redacted documents);

iii. FROM;

iv. TO, CC & BCC;

v. NON-EMAIL AUTHOR(S)/RECIPIENT(S);

vi. SENT DATE or DATE CREATED and, if different, DATE RECEIVED by persons other than its author(s);

vii. The subject matter or general nature of the document (without disclosing its contents);

viii. The document's present location;

ix. The specific basis for the claim that it is privileged (e.g., Attorney-Client Communication, Attorney Work Product);

x. If the document is redacted, a corresponding entry on the privilege log reflecting that a redaction has been applied.

c) Communications involving legal counsel that post-date the filing of the complaint in *Lyon v. Adobe Inc.*, No. 3:25-cv-10732-JSC (filed on December 16, 2025) need not be placed on a privilege log.

d) Privilege logs shall be produced within 45 days of the production from which documents are withheld or redacted for privilege, or at a reasonable time as agreed upon by the Parties. Privilege logs shall be produced in Excel, Word, or another reasonably usable format, and shall separately log each document withheld or redacted.

e) Information to be included in the log may be generated from available metadata so long as it is reliable and does not contain information that is privileged and protected.

**9. NON-PARTY DOCUMENTS**

a) A Party that issues a subpoena ("Issuing Party") upon any non-party shall include a copy of this Order and any protective order agreed and/or entered in this litigation with the subpoena and state that the Parties in this litigation have requested that non-Parties produce documents in accordance with the specifications set forth herein, to the extent reasonably feasible.

b) If the Issuing Party receives any documents in response to a non-party subpoena, the Issuing Party shall produce promptly within 7 business days of receipt to all other Parties a copy of the documents in the form in which they were received and subject to all the procedures and protections set forth in any applicable protective order or confidentiality stipulation and may not use those documents in this action until such production has been made.

c) If the documents produced by the non-party are produced without Bates numbers, the Issuing Party shall apply new Bates numbers prior to producing such documents to all other Parties. If the Issuing Party receives hard-copy documents in response to a subpoena, the Issuing Party shall process the documents in accordance with the provisions of this Order and then produce the processed hard-copy documents to all Parties.

**10. NO WAIVER**

Matters not addressed in this protocol shall not be deemed waived. Rather, any such matters shall be addressed by the Parties at a later time through additional meeting and conferring and, if necessary, submission to the Court for resolution.

**11. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**12. PRODUCTION OF DOCUMENTS RELATED TO *TANZER v. ADOBE INC.***

Pursuant to the Court's July 1, 2026 Order (ECF No. 47), and to avoid duplicative production obligations in the *Lyon* and *Tanzer* matters, Adobe shall, concurrently with making any discovery production in *Lyon*, produce in *Tanzer* all documents, ESI, and other materials included in that production.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: 10/2/2026 *_/s/ Donald S. Cuba II_*
Attorney for Plaintiffs

DATED: 10/2/2026 *_/s/ Jonathan Swisher_*
Attorney for Defendant

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: October 5, 2026 ______________________________

Hon. Jacqueline Scott Corley

UNITED STATES

UNITED STATES DISTRICT COURT
GRANTED
Jacqueline Scott Corley
Judge Jacqueline Scott Corley
NORTHERN DISTRICT OF CALIFORNIA

**EXHIBIT A – Table of Metadata Fields**

| **Field** | **Definition** | **Doc Type** |
|---|---|---|
| BEGBATES | Beginning Bates number (production number) | All |
| ENDBATES | Ending Bates number (production number) | All |
| BEGATTACH | First Bates number of the first Document in the Document Family | All |
| ENDATTACH | Last Bates number of the last Document in the Document Family | All |
| PAGE COUNT | Number of pages in the Document | All |
| NATIVE FILE LINK | The file path for Documents provided in Native Format | All |
| TEXTPATH | File path for the Searchable Text file | All |
| HASHVALUE | Hash value (*e.g.*, MD5 or SHA-1) | All |
| CUSTODIAN | Name of person from which Documents/files were collected or, in the case of non-human sources, a short description of that source (*e.g.*, "Shared Drive"). | All |
| ALLCUSTODIANS | The custodian of the document as well as for all copies of the Document that were removed as a result of de-duplication | All |
| ORIGINAL FOLDER/FILE PATH | Original file path or original location path | E-Document |
| EMAIL FOLDER PATH | Email folder path | Email |
| FROM | Sender | Email |
| TO | Recipient | Email |
| CC | Additional recipients | Email |
| BCC | Blind additional recipients | Email |
| EMAIL SUBJECT | Subject line of email | Email |

| | | |
|---|---|---|
| DATE/TIME SENT | Date sent (mm/dd/yyyy hh:mm:ss) *May be produced as two separate fields.* | Email |
| DATE/TIME RECEIVED | Date received (mm/dd/yyyy hh:mm:ss ) *May be produced as two separate fields.* | Email |
| FILENAME | Original filename at the point of collection | E-Document |
| FILESIZE | Size of the file | E-Document |
| TITLE | Title of document or title field extracted from Metadata of non-Email ESI | E-Document |
| AUTHOR | Creator of a Document | E-Document |
| DATE/TIME CREATED | Creation date (mm/dd/yyyy hh:mm:ss) *May be produced as two separate fields.* | E-Document |
| LAST MODIFIED DATE/TIME | Last modified date (mm/dd/yyyy hh:mm:ss) *May be produced as two separate fields.* | E-Document |
| DOC EXTENSION | File extension of the document | All |
| REDACTED | "Yes" for redacted documents; "No" for un-redacted documents | All |
| PRODVOL | Production volume of data | All |
| CONFIDENTIALITY | Confidentiality designation if assigned pursuant to any applicable Protective Order or stipulation | All |
| SOURCE | The producing party | All |
| ATTACHIDS | The IDs of the documents that are attached to the produced document | All |
| PARENT ID | Indicates the parent ID for an attachment or embedded document. The parent document ID field should be set for all attachments (including attachments that are Emails) but should not be set for parents. | All |